UNITED STATES of America for the Use and Benefit of LOCHRIDGE–PRIEST, INC., Plaintiff–Appellee, Cross–Appellant,

v.

CON–REAL SUPPORT GROUP, INC., Defendant–Appellant, Cross–Appellee,

and

St. Paul Mercury Insurance Company, Defendant–Appellant.

No. 90–8633
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Jan. 10, 1992.

Michael F. Pezzulli, Pezzulli & Assoc., Carol E. Farquhar, Dallas, Tex., for defendant-appellant, cross-appellee.

David Earl Cherry, Fred M. Johnson, Jr., Pakis, Cherry, Beard & Giotes, Waco, Tex., for plaintiff-appellee, cross-appellant.

Before GOLDBERG, KING and GARWOOD, Circuit Judges.

GOLDBERG, Circuit Judge:

In this Miller Act case, contractor Con–Real Support Group, Inc. and its Miller Act surety St. Paul Mercury Insurance Company present four primary arguments on appeal: first, whether the district court erred in finding that the subcontractor Lochridge–Priest, Inc. provided Con–Real with additional work; second, whether the district court erred in finding that Con–Real delayed L–P's performance of its work under the subcontract; third, whether the district court erred in calculating prejudgment interest; and, fourth, whether the district court erred in awarding attorney's fees to L–P.

## I. BACKGROUND

Con–Real Support Group, Inc. ("Con–Real") contracted with the United States, acting through the Small Business Administration, to renovate two buildings at the Veterans' Administration Medical Center in Waco, Texas. As required by 40 U.S.C. § 270a(a), Con–Real secured a payment bond from St. Paul Mercury Insurance

Company ("St. Paul"). Con–Real subcontracted certain mechanical work ("Subcontract") to Lochridge–Priest, Inc. ("L–P").

L–P substantially completed the work required by the Subcontract on January 15, 1990, seven months after the June 25, 1989 date set by the government. L–P sued Con–Real and St. Paul on the Miller Act payment bond and also brought state law contract and quantum meruit claims. Con–Real and St. Paul counterclaimed for breach of contract and delay damages.

The district court entered judgment against Con–Real and St. Paul based on its findings that Con–Real failed to pay L–P $117,976.01 for amounts billed by L–P under the Subcontract and $1,682.00 for plumbing fixtures replaced by L–P because Con–Real caused the premature installation of the initial fixtures. The district court also held that L–P owed Con–Real $8,950.28 in damages for breach of contract for failing to perform certain work under the Subcontract. The parties do not challenge these portions of the court's judgment.[1]

The district court also entered judgment against Con–Real and St. Paul based on its findings that Con–Real required L–P to perform work in addition to that specified in the Subcontract: specifically, Con–Real demanded the submission of excessive data and the digging of an underground oxygen line.

Con–Real delayed L–P with its changes to the plumbing design, obstructed L–P's testing of heating and air conditioning equipment, and failed to provide L–P with proper sink vanity tops. Reasoning that L–P's delay claims were "for damages incurred due to disruptions and interference with its work," the district court held that L–P could recover these "delay expenses" from Con–Real, but not from Miller Act surety St. Paul. The court also awarded L–P prejudgment and postjudgment interest on the joint judgment against Con–Real and St. Paul on the Subcontract and additional work claims, and on the judgment against Con–Real on the delay claim. The court subsequently granted L–P's motion for attorney's fees on its state law contract claim against Con–Real.

■ Con–Real and St. Paul present four key issues on appeal.[2] We reverse the district court's judgment as to L–P's delay claim and prejudgment interest, affirm the judgment in all other respects, and remand for further proceedings consistent with this opinion.

## II. DISCUSSION

### A. Extra Work Provided by L–P.

■ Con–Real challenges several of the district court's findings of fact regarding extra work provided by L–P. Con–Real argues that the record does not support the district court's findings that Con–Real required L–P to provide excessive submittal data on VAV boxes and sound attenuators and that Con–Real required L–P to perform additional work in hand-digging an under-

---

1. L–P does argue in its cross-appeal that the district court should have entered judgment against Con–Real for the net amount of its liability by offsetting the amount awarded in favor of L–P by the smaller amount awarded against L–P. The record indicates that L–P did not move to alter or amend the judgment on this ground, and we decline to entertain an issue more properly directed to the district court.

2. We briefly pause to address an additional argument raised by Con–Real and St. Paul. Con–Real argues that the district court erroneously found that L–P did not cause certain expenses and delays. Absent clear error, we will not reverse findings of fact. *Brister v. A.W.I., Inc.*, 946 F.2d 350, 354 (5th Cir.1991) (citation omitted). The record supports the district court's findings on these factual issues: 1) L–P was not responsible for damage to a swimming pool steam line (Am.F.Fact 22; R.Vol. 3 at 97–98); 2) L–P was not responsible for installing heat trace tape (Am.F.Fact 24; R.Vol. 3 at 101–06; R.Vol. 5 at 391–92; Plaintiff's Exh. 38 at 2 art. 2, 39 at 66 ¶ 1.1); 3) L–P was not responsible for delay of the completion of the Subcontract or the contract between Con–Real and the government (Am.F.Fact 26; R.Vol. 3 at 112–13, 117–20; R.Vol. 4 at 257, 263, 272–75; R.Vol. 5 at 283–84, 295–98, 319–21, 337–38, 340–44, 359–60, 373; R.Vol. 6 at 557–58, 563; Plaintiff's Exh. 66, 68, 92 at 43–55); 4) L–P was not responsible for certain expenses associated with the redesign of the air-conditioning duct work, specifically, the installation of two VAV boxes (Am.F.Fact 20; R.Vol. 5 at 330–33, 353–54; R.Vol. 6 at 406–07, 424–25).

ground oxygen line. (Am.F.Fact 14–16) We have reviewed the record in its entirety, and although we agree with Appellant that the evidence supports more than one inference, we find no clear error in the district court's findings.[3]

### B. Delay by Con–Real.

■ Con–Real disputes the district court's findings of fact that Con–Real delayed L–P with plumbing design changes, obstructed L–P's testing of heating and air conditioning equipment, and failed to provide L–P with proper sink vanity tops. (Am.F.Fact 13, 17, 19) Con–Real asserts that L–P at least partially caused these delays, and thus cannot recover against Con–Real. As with the findings regarding extra work provided by L–P, the record supports the district court's findings of fact on these issues concerning Con–Real's delays.[4]

■ We shift our attention to the district court's conclusion of law that "claims for delay expenses are not recoverable against a Miller Act surety." After the district court entered its amended findings of fact and conclusions of law and the parties in this case filed their briefs, we decided *United States ex rel. T.M.S. Mechanical Contractors, Inc. v. Millers Mut. Fire Ins. Co. v. The Craftsmen, Inc.*, 942 F.2d 946 (5th Cir.1991). Joining the District of Columbia and Eleventh Circuits, in *Millers Mutual* we held that a subcontractor can recover " 'out-of-pocket costs of delay' " from a Miller Act surety. *Id.* at 952 (citing *United States ex rel. Pertun Constr. Co. v. Harvesters Group, Inc.*, 918 F.2d 915,

918 (11th Cir.1990)). In awarding delay expenses against a Miller Act surety, however, the district court must first determine that the subcontractor did not cause the delay,[5] then carefully limit the recovery to "costs *actually expended* in furnishing the labor or material in the prosecution of the work provided for in the contract." *Id.* (emphasis in original). It has definitely been decided that delay expenses can be recovered against a Miller Act surety under the conditions set forth in *Millers Mutual*. We thus reverse the judgment as to liability for L–P's delay expenses and remand to allow the district court to apply *Millers Mutual*.

### C. Calculation of Prejudgment Interest.

The district court awarded prejudgment interest on L–P's Miller Act claim against the surety, St. Paul, and on L–P's state law claims against the contractor, Con–Real. After the district court reconsiders the issue of liability for L–P's delay expenditures, it will necessarily recalculate the prejudgment interest on the two judgments. We consider separately the liability of the Miller Act surety for prejudgment interest on the Miller Act claim and the liability of the contractor for prejudgment interest on the state law claims.

#### 1. *Judgment based on the Miller Act Claim.*

Although federal law governs the scope of the remedy available to a Miller Act claimant, including the amount of prejudgment interest, state law injects itself into the analysis because the Miller Act does

---

**3.** Each finding is supported by sufficient evidence: 1) Excessive submittal data on the VAV boxes (R.Vol. 3 at 53–56, Plaintiff's Exh. 40, 85 at 4, 27, 56–58); 2) Excessive submittal data on the sound attentuators (R.Vol. 3 at 57–62; R.Vol. 4 at 154–57, 161; Plaintiff's Exh. 39 at 20 ¶ B.3, 40, 87 at 5, 7, 20, 76; Plaintiff's Exh. 91 at 18); 3) Installation of underground oxygen line (R.Vol. 3 at 64–65; Plaintiff's Exh. 40, 76).

**4.** The record shows that Con–Real delayed L–P with plumbing design changes (R.Vol. 3 at 43–44, 48–51; R.Vol. 4 at 145, 147–51; Plaintiff's Exh. 40, 43, 77 at 2–7, 91), Con–Real obstructed L–P's testing of heating and air conditioning equipment (R.Vol. 3 at 35–37, 85–91; R. Vol. 4

at 174, 224–29; R. Vol. 5 at 319–20, 394; Plaintiff's Exh. 40, 50, 51, 54–56, 58 ¶ 3, 59, 61, 68, 78 at 3, 7–9), and Con–Real delayed L–P by failing to provide L–P with proper sink vanity tops (R.Vol. 3 at 79–81; R.Vol. 4 at 170–71; Plaintiff's Exhibit 40, 50, 53, 57 ¶ 8, 84 at 5). Furthermore, the record adequately demonstrates that L–P did not delay performance of the Subcontract or the contract between Con–Real and the government. *See supra* note 2.

**5.** As noted above, the district court found that L–P did not cause *any* delay in the completion of the Subcontract or the contract between Con–Real and the government. *See supra* note 2.

not provide "standards for the allowance of prejudgment interest." *United States ex rel. Ga. Elec. Supply Co. v. United States Fidelity and Guar. Co.*, 656 F.2d 993, 997 (5th Cir.Unit B 1981); *see United States ex rel. Canion v. Randall & Blake*, 817 F.2d 1188, 1193 (5th Cir.1987) (citing *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116, 128, 94 S.Ct. 2157, 2164, 40 L.Ed.2d 703 (1974)). Courts thus "look to state law 'as a matter of convenience and practicality.'" *Georgia Electric*, 656 F.2d at 997 (citation omitted). In this case, we must refer to Texas law to ascertain the standard for assessing prejudgment interest against a Miller Act surety. When the parties have not agreed on an interest rate, as in this case, Texas law allows "six percent interest per annum ... on all accounts and contracts ascertaining the sum payable, commencing on the thirtieth (30th) day from and after the time when the sum is due and payable." Tex. Rev.Civ.Stat.Ann. art. 5069–1.03 (Vernon 1987).

The issue is when prejudgment interest awarded on a Miller Act claim based on a breach of contract theory begins to accrue—at what point in time did the sums comprising the judgment amount against the surety become "due and payable" to L–P? The district court consulted Texas law, reasoned that "[t]he Miller Act provides that the subcontractor shall be paid in full 'ninety days after the day on which the last of the labor was done or performed by the [the subcontractor] or material was furnished or supplied by [the subcontractor],'" and determined that each bill became "due and payable" one hundred and twenty days after its billing date. *See* 40 U.S.C.A. § 270b(a) (West 1986). The court thus awarded L–P six percent interest per annum on the judgment against Con–Real and St. Paul on L–P's Miller Act claim *and* the judgment against Con–Real on L–P's state law claims, beginning one hundred and twenty-one days "after the billing for each specific item" and running until the date of judgment.

Con–Real and St. Paul argue that the Subcontract entitled L–P to final payment by Con–Real only after Con–Real received final payment from the government, and point out that the record does not reveal whether Con–Real ever received final payment from the government. Appellants assert that the district court erred in calculating interest without reference to when the payments became due under the terms of the Subcontract. L–P assumes that Con–Real and St. Paul's argument challenges only the calculation of prejudgment interest on L–P's Miller Act claim, and not the computation of interest on L–P's state law claims. L–P contends that the monthly amounts L–P billed to Con–Real for new work cannot be grouped into one sum and labeled a "final payment" subject to the restriction of final payment by the government to Con–Real under the Subcontract. L–P argues that payment must be made by Con–Real to L–P within a reasonable time, whether or not it receives payment by the government, and that the district court properly calculated prejudgment interest based on the "due dates" provided to the court by L–P.

■■■ When a subcontractor sues on a Miller Act payment bond, the subcontractor can recover all amounts unpaid for "labor or material furnished in prosecution of the work provided for in such contract" between the government and the contractor from the Miller Act surety. 40 U.S.C.A. § 270b(a) (West 1986). The expiration of the ninety-day period that follows the subcontractor's final performance of labor or supply of materials merely creates a right to sue the surety on the payment bond for amounts recoverable under the Miller Act. It does not automatically transform all amounts recoverable under the Miller Act into sums "due and payable" under Texas law. It plays no part in computing the amount of prejudgment interest allowable on the Miller Act claim, which is determined by reference to state law. And, contrary to Appellants' contention, the subcontractor can recover from the Miller Act surety for labor and material furnished in prosecution of the contract "despite nonpayment by the government to the contractor." *Millers Mutual*, 942 F.2d at 949 n. 6 (citation omitted). Otherwise, the Miller

Act fails its essential purpose—to provide security for suppliers of labor and material on government construction projects.

■ The issue of prejudgment interest is based on an entirely different analysis. Since the Miller Act turns us to Texas law, the question as to the assessment of prejudgment interest against a Miller Act surety is when the principal amount became "due and payable" under the terms of the Subcontract, not whether that amount is recoverable against the surety under the Miller Act. This means that the subcontractor can recover prejudgment interest from the surety only on amounts "due and payable" under the Subcontract, beginning thirty days after the sums became "due and payable." Tex.Rev.Civ. Stat.Ann. art. 5069–1.03 (Vernon 1987); *see United States ex rel. Seminole Sheet Metal Co. v. SCI, Inc.*, 828 F.2d 671, 678 (11th Cir.1987) (analyzing award of prejudgment interest under the Miller Act by reference to Florida law). If the government in this case has not made final payment to Con-Real, for example, then L–P is not entitled to prejudgment interest on its "final payment" because that final payment would not yet be "due" under the Subcontract.[6] On remand, the district court must determine when each amount incorporated in the judgment against Miller Act surety St. Paul became "due and payable" under the Subcontract, and calculate the prejudgment interest commencing thirty days after that point in time.

■ L–P's quantum meruit theory apparently formed the basis for at least part of the district court's judgment on L–P's Miller Act claim. Prejudgment interest on amounts recoverable against a Miller Act surety based in quantum meruit and not on a breach of contract theory plainly cannot be assessed by reference to the Subcontract. The analytical framework for calculating prejudgment interest on the portion of the Miller Act claim based in quantum meruit, however, closely resembles that for

assessing prejudgment interest on the portion of the Miller Act claim based on breach of contract theory because, again, we are guided by state law. The award of prejudgment interest against a Miller Act surety based in quantum meruit involves reference to Texas law because the Miller Act does not provide the methodology to compute the amount of allowable prejudgment interest.

The district court must determine when the prejudgment interest awarded on a Miller Act claim based in quantum meruit begins to accrue under Texas law. Texas law allows a court to award prejudgment interest on a recovery in quantum meruit if the measure of the recovery was "established as of a definite time" and the amount of the recovery "definitely determinable" by a court under the rules of evidence and by reference to known standards of value. *Black Lake Pipe Line Co. v. Union Constr. Co.*, 538 S.W.2d 80, 95–96 (Tex.1976), *overruled on other grounds, Sterner v. Marathon Oil Co.*, 767 S.W.2d 686 (Tex.1989); *see Davidson v. Clearman*, 391 S.W.2d 48, 52 (Tex.1965); *Williams v. Roberts*, 621 S.W.2d 427, 429 (Tex.Civ. App.—San Antonio 1981, no writ); *McDaniel v. Tucker*, 520 S.W.2d 543, 549 (Tex.Civ. App.—Corpus Christi 1975, no writ). The interest commences from the date of the loss. *Black Lake Pipe*, 538 S.W.2d at 96.

2. *Judgment based on the State Law Claims.*

■ The aegis of the determination of prejudgment interest entails one analysis with respect to L–P's Miller Act claim and another with respect to L–P's state law claims. In this case, the analyses converge because the Miller Act incorporates the same state law standard used to properly assess prejudgment interest on L–P's state law claims. The district court must recompute the prejudgment interest on the judgment against Con–Real on L–P's state law claims in conformity with the standards explained above as to the portion of the

---

**6.** Article six of the Subcontract provides in relevant part that "[f]inal payment, constituting the entire unpaid balance of the Contract Sum, shall be due when the Work described in this Subcon-

tract is fully completed ... and shall be payable ... [w]ithin ten (10) calendar days after the Contractor has received final payment from the Owner."

judgment based on breach of contract theory and that based in quantum meruit.

We reverse the district court's judgment as to prejudgment interest on L–P's Miller Act claim and L–P's state law claims and remand to enable the district court to recalculate prejudgment interest in accordance with this opinion.

### D. Attorney's Fees.

 In its order granting L–P's motion for attorney's fees on its state law contract claim against Con–Real, the district court noted "that Defendants have failed to respond to this motion." Con–Real now challenges the sufficiency of the evidence supporting the district court's award of attorney's fees. In *Pope v. MCI Telecomm. Corp.*, 937 F.2d 258, 267 & n. 46 (5th Cir. 1991), this Court held that a failure to contest a request for attorney's fees within the time allowed by the local rules meant that the nonprevailing party could "not raise the issue for the first time on appeal." Con–Real received a copy of L–P's application for attorney's fees two days before L–P filed the application, but did not respond within the ten days allowed by United States District Court for the Western District of Texas Local Rule CV–7(j)(2) for objections to such motions. The district court granted L–P's motion for attorney's fees well after the ten-day period. Although Con–Real objected to L–P's application after the district court granted the motion, its objection was untimely under the local rule. Con–Real cannot raise its objections to L–P's claim for attorney's fees on appeal.

### III. CONCLUSION

For the foregoing reasons, we REVERSE the judgment of the district court as to L–P's delay claim and pre-judgment interest, AFFIRM the judgment in all other respects, and REMAND for further proceedings in accordance with this opinion.