IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 97-11068

---

The United States of America for the use of VARCO PRUDEN BUILDINGS, a unit of United Dominion Industries, Inc., a Delaware Corporation, also known as United Dominion Industries, Inc.

        Plaintiff - Counter Defendant - Appellant

                    versus

REID & GARY STRICKLAND CO., A Texas Corporation

        Defendant - Counter Claimant - Third Party Plaintiff
        Appellee - Appellant

and

ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a Minnesota Corporation

        Defendant - Counter Claimant - Counter Defendant
        Appellant

                    versus

FILE-STEELE ERECTORS CO. INC., a New Mexico Corporation

        Third Party Defendant - Counter Claimant - Appellee

---

Appeals from the United States District Court
for the Northern District of Texas

---

December 1, 1998

Before HIGGINBOTHAM, DAVIS and BARKSDALE, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

This appeal resolves several claims for attorneys' fees and interest stemming from the construction of an Air Force hangar in New Mexico. The ultimate resolution of the damage claims is not before us. We must decide whether to apply the law of Texas or the law of New Mexico and whether the claims for attorneys' fees are efforts to recover attorneys' fees as part of a Miller Act claim or state law claims supplemental to a Miller Act claim.

I.

In April 1993, Reid & Gary Strickland Company, a general contractor, submitted to the United States Corps of Engineers a bid to construct a six-bay hangar at Cannon Air Force Base near Clovis, New Mexico. On June 4, 1993, Strickland signed and returned to Varco Pruden Buildings, Inc., a purchase order for metal building components needed to complete the hangar. The purchase order was signed and returned to avoid a possible price increase and was contingent upon the award of the hangar contract to Strickland. The form provided that the transaction would be governed by the laws of Tennessee.

The United States awarded the hangar contract to Strickland on August 2, 1993. On the same day, Strickland submitted an order form to Varco Pruden which stated that Varco Pruden would furnish the pre-fabricated and pre-engineered metal building necessary for the completion of the hangar in return for $607,865.00. The August

2

2, 1993, purchase order provided that Texas law would govern the transaction. Varco Pruden returned the form on March 15, 1994.

Pursuant to the Miller Act, Strickland and St. Paul Fire and Marine Insurance Company executed and delivered to the United States on August 3 a payment bond for $6,833,599.28.[1]

On August 9, Strickland and File-Steele Erectors Company executed two subcontracts for the hangar project. One subcontract was for the unloading and erecting of all reinforcing steel, and the other was for the erection of the structural steel and the metal building.

Varco Pruden delivered the metal building components to the job site in New Mexico, but the components were non-conforming, defective, and mismarked. As a result, File-Steele had to perform additional work--labor not originally contemplated in its subcontract with Strickland--to remedy the problems. At various times throughout the project, representatives of both Strickland and Varco Pruden assured File-Steele that it would be paid for its extra work on the project.

In March 1994, Varco Pruden agreed directly with File-Steele to pay File-Steele for the extra work. Pursuant to this

---

[1]The Miller Act requires the bond "for the protection of all persons supplying labor and material in the prosecution of the work provided for in . . . [the] contract." 40 U.S.C. § 270a(a)(2). The Act further provides that any person who has so furnished labor or material and who has not been paid in full within ninety days after the last labor was performed or materials supplied may bring suit in federal court on the payment bond for the unpaid balance. *See id.* § 270b(a).

arrangement, File-Steele submitted extra work "tickets" to Strickland so that Strickland could confirm that File-Steele had actually performed the work denoted on the tickets. Strickland then returned the tickets to File-Steele for pricing; after File-Steele placed prices on the tickets, it returned them to Strickland for forwarding to Varco Pruden.

At the end of the project, Varco Pruden had not received full payment from Strickland, and File-Steele had not been paid for its extra work. In addition, Strickland still owed File-Steele $8,344.38 under its original contract.

Varco Pruden filed a Miller Act claim against Strickland in federal district court in New Mexico. The case was transferred by stipulation to the district court for the Northern District of Texas. Strickland counterclaimed against Varco Pruden, alleging breach of contract, and filed a third-party claim against File-Steele, seeking a declaratory judgment to determine the correct amount owed by Strickland to File-Steele. In its answer and counterclaim to the third-party complaint, File-Steele asserted Miller Act and state law claims against Strickland, St. Paul, and Varco Pruden.

The case was tried to the bench for nine days. The court awarded File-Steele $238,645.97 from Strickland and St. Paul for File-Steele's extra work. The amount was offset by $44,403.51-- payments Strickland previously had made to File-Steele as an incentive to continue with the project. The court also awarded

4

File-Steele $8,344.38 against Strickland under the original subcontract. The trial court found against File-Steele on its claim against Strickland for delay damages and on its claim against Strickland and Varco Pruden for fraud and misrepresentation.

The court awarded Strickland $11,057.66 against Varco Pruden on its breach of contract claim, and the court found that Varco Pruden was liable to Strickland for the $44,403.07 that Strickland had paid for File-Steele's extra work. The court also found that Strickland was entitled to indemnification from Varco Pruden for the remaining amounts awarded to File-Steele for extra work-- $194,242.46. These amounts were offset by the amount still owed Varco Pruden by Strickland, $244,939.00, making a net award to Strickland against Varco Pruden of $4,764.63. That is, assuming that Strickland or St. Paul would pay File-Steele the $194,242.46 for the extra work, Varco Pruden would owe Strickland $4,764.63, exclusive of attorneys' fees and prejudgment interest. The trial court found against Strickland on its claims against Varco Pruden for delay damages and on its claims under the Texas Deceptive Trade Practices Act and the New Mexico Uniform Trade Practices Act.

Finally, the court awarded to File-Steele attorneys' fees of $116,708.16 against Strickland and Varco Pruden, jointly and severally, for which Varco Pruden had to indemnify Strickland, and it awarded Strickland fees of $71,879.85 against Varco Pruden.

II.

First, Varco Pruden and Strickland appeal the district court's award of attorneys' fees against them to File-Steele. Awards of attorneys' fees are generally reviewed for abuse of discretion, but application of the correct legal standard is reviewed de novo. *See United States ex rel. Leno v. Summit Constr. Co.*, 892 F.2d 788, 790 (9th Cir. 1989)

It is undisputed that attorneys' fees can not be awarded in Miller Act claims absent an enforceable contract provision or evidence of bad faith. *See F.D. Rich Co., Inc. v. United States ex rel. Industrial Lumber Co., Inc.*, 417 U.S. 116, 126-31 (1974). Varco Pruden and Strickland argue that this is solely a Miller Act case: File-Steele pressed no state law causes of action, and the trial court did not find in favor of File-Steele on any state law claim. Thus, pursuant to *F.D. Rich*, if this case is solely a Miller Act case, the award of attorneys' fees pursuant to state law was improper.

File-Steele did assert state law claims against Strickland and Varco Pruden over which the court exercised supplementary jurisdiction, and the district court awarded attorneys' fees under those claims. The Pretrial Order clearly states that File-Steele sought recovery under state law. Further, the district court held that File-Steele was entitled to recover attorneys' fees on its state law causes of action. We do not read *F.D. Rich* to prohibit an award of attorneys' fees under a state claim over which the

6

court has exercised supplementary jurisdiction in a Miller Act case. Admittedly, in many Miller Act cases supplemental jurisdiction offers a neat sidestep to the broad policy statements of *F.D. Rich*. When the sidestep is available it is because Congress has by separate statute, 28 U.S.C. § 1367, made possible simultaneous prosecution of Miller Act and state law claims. *See United States v. Insurance Co. of N. Am.*, 695 F.2d 455, 457–58 (10th Cir. 1982) (holding that recovery under the Miller Act is not a subcontractor's exclusive remedy against the general contractor); *United States v. McKee, Inc.*, 702 F. Supp. 1298, 1301–02 (N.D. Tex. 1988) (construing the Miller Act as an alternative means of recovery, not a replacement of state law causes of action). Moreover, it is only a half step because recovery on the bond must be under the Miller Act.

Moreover, the district court was correct in applying Texas law to File-Steele's state-based claims against Strickland and thus looking to Texas law on the issue of attorneys' fees. The general rule is that a federal court applies the choice-of-law rules of the state in which it sits. *See Atlantic Mut. Inc. Co. v. Truck Ins. Exch.*, 797 F.2d 1288 (5th Cir. 1984). When a suit is transferred pursuant to 28 U.S.C. § 1406(a), the choice-of-law rules of the transferee court's state apply. *See Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1141 (5th Cir. 1992). A federal court in Texas tried this case after a transfer for improper venue from

7

New Mexico.  Under Texas law, the substantive law of the state chosen by the parties to govern their contractual rights and duties will be applied unless the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice.  *See DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex. 1990).  File-Steele's contract with Strickland provided that Texas law would govern the transaction.  Strickland is incorporated in Texas and conducts business in Texas; thus, Texas has a substantial relationship to the transaction and the forum clause will be upheld.  Attorneys' fees are recoverable under Texas law.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001.

We need not reach whether the district court could correctly hold that Varco Pruden independently owed attorneys' fees to File-Steele.  The district court held Varco Pruden and Strickland jointly and severally liable for the fees, and it held that Varco Pruden had to indemnify Strickland for fees it paid to File-Steele.  Because we affirm the district court's holding on fees as to Strickland, and Varco Pruden does not appeal the indemnification ruling, File-Steele's award on attorneys' fees against both parties goes undisturbed.

III.

8

Varco Pruden contends that, in the event that the district court did not err in awarding attorneys' fees to File-Steele, File-Steele should have been required to segregate its fees. A party requesting attorneys' fees carries the burden of proof and the duty to segregate fees. *See Smith v. United National Bank-Denton*, 966 F.2d 973, 978 (5th Cir. 1992). An award of attorneys' fees rests in the sound discretion of the trial court, and its judgment will not be reversed absent a clear showing that it abused its discretion. *See Brunn v. Central Realty of Louisiana*, 592 F.2d 891, 892 (5th Cir. 1979).

The district court did not require that File-Steele segregate its fees into those fees incurred for successful claims and those incurred for unsuccessful claims. Instead, the court found that no segregation was required because the claims arose out of the same transaction and were so interrelated that their prosecution or defense entailed proof or denial of essentially the same facts. *See Flint & Assocs. v. Intercontinental Pipe & Steel, Inc.*, 739 S.W.2d 622 (Tex. App.--Dallas 1987, writ denied).

However, Varco Pruden points out that while the court awarded damages under the Federal Prompt Pay Act and for the cost of the extra work as shown by the extra work tickets, it denied File-Steele's claims for delay damages and for fraud and misrepresentation. Varco Pruden stresses that fees from the delay claim in particular should have been segregated.

Nonetheless, the district court did not err.  These claims are intertwined and connected to the defective parts and the resulting extra work.  Thus, the trial court did not abuse its discretion in not requiring the fees to be segregated.

IV.

Varco Pruden maintains that the district court erred in granting attorneys' fees to Strickland from Varco Pruden. Strickland asserted state law claims against Varco Pruden.  The issue of whether Strickland is entitled to attorneys' fees from Varco Pruden hinges upon which state's law applies to the award of fees.  The two states under consideration, Texas and New Mexico, have different laws regarding attorneys' fees.  Texas law provides for recovery of attorneys' fees, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001, but New Mexico does not, *see Aboud v. Adams*, 507 P.2d 430, 438-39 (N.M. 1973) (noting that New Mexico follows the general rule, with limited exceptions not applicable here, that each party to litigation must pay his own counsel fees).  Varco Pruden wants New Mexico law to apply, and Strickland wants Texas law to apply.

Under Texas choice-of-law rules, the substantive law of the state chosen by the parties to govern their contractual rights and duties will be applied unless the chosen state has no substantial relationship to the parties or the transaction and there is no

other reasonable basis for the parties' choice. *See DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex. 1990).

There is a complication: two different forms with two different choice of law provisions. The June 4 order specifies Tennessee law as controlling the transaction; the August 2 order specifies Texas law. Both sides offer solutions to this dilemma. Varco Pruden argues that this exchange of orders was an exchange of offers and constitutes a "battle of the forms," implicating § 2-207 of the Uniform Commercial Code. On the other hand, Strickland argues that the contract in this case was formed June 4, and that the June 4 agreement was modified by the August 2 purchase order. The August 2 order provided that Texas law applied to the transaction.

Before we can reach the question of which law to apply to the transaction, we must decide whether the two forms present a battle of the forms or whether the August 2 order was a modification. To decide this initial question, we must choose a particular state's law and apply it to the facts. Fortunately, the law of the states with the most significant contacts to this transaction--New Mexico and Texas--is substantially the same on these issues.

Under either state's law, the initial question is whether the June 4 order form constitutes an offer or a binding contract. The Varco Pruden purchase order states that it "shall be subject to acceptance by Varco Pruden." The trial court found that, even

11

though no representative of Varco Pruden signed the purchase order, it was accepted by Varco Pruden and constituted a binding contract between the parties. The order could constitute a contract if it was considered "a writing in confirmation of the contract" under New Mexico Statute § 55-2-201(2) or Texas Business and Commerce Code § 2.201(b). These sections provide that, between merchants, if a writing in confirmation of an agreement is received by one party within a reasonable time, there is a binding contract if no objection is made within ten days. *See* N.M. STAT. ANN. § 55-2-201; TEX. BUS.& COM. CODE ANN. § 2.201.

Varco Pruden objects that even if the June 4 order was a binding contract, the August 2 order was not a valid modification because it was not supported by consideration. However, both Texas Business and Commerce Code § 2.209 and New Mexico Statute § 55-2-209 provide that in contracts for the sale of goods, such as this one, a modification needs no consideration to be binding.

Strickland also argues that in the stipulation transferring this case from the District of New Mexico to the Texas federal district court, Varco Pruden expressly agreed that the August 2 purchase order was the controlling agreement between the parties. However, a review of the stipulation for transfer in the record reveals that Varco Pruden stipulated that the August 2 form contained a valid venue selection clause; nothing was stated about the choice-of-law provision. The June 4 order form did not contain

12

a venue selection clause. Thus, pursuant to Varco Pruden's "battle of the forms" argument, the August 2 venue provision could be considered part of the contract, assuming the venue clause is not considered a material alteration under U.C.C. § 2-207.

If Strickland's argument is incorrect and the June 4 form was actually just an offer, then New Mexico Statute § 55-2-207 and Texas Business and Commerce Code § 2.207 apply. Section 2-207's provisions determine whether additional or conflicting terms submitted in a subsequent form--in this case a different choice of law provision--become part of the contract. According to § 2-207, the additional terms are construed as proposals for additions to the contract and, as between merchants, become part of the contract unless:

> (1) the offer expressly limits acceptance to the terms of the offer;
> (2) they materially alter it; or
> (3) notification of objection to them has already been given within a reasonable time after notice of them is received.

N.M. STAT. ANN. § 55-2-207; TEX. BUS.& COM. CODE ANN. § 2.207.

Both parties are merchants, and Varco Pruden contends that exception (2) applies to the instant case. According to Varco Pruden, the provision of the August 2 form stating that Texas law applies materially alters and conflicts with the June 4 form provision applying Tennessee law. Under New Mexico law, when such terms conflict, the terms do not become part of the contract. *See Gardner Zemke Co. v. Dunham Bush, Inc.*, 850 P.2d 319, 325-26 (N.M.

13

1993). In Texas, there is a split of authority as to whether the offeror's terms control or whether the conflicting terms drop out of the contract. *See Reynolds Metal Co. v. Westinghouse Elec. Corp.*, 758 F.2d 1073, 1077 n.5 (5th Cir. 1985); *Brochsteins, Inc. v. Whittaker Corp.*, 791 F. Supp. 660, 661 (S.D. Tex. 1992). Thus, either Tennessee law applies pursuant to the June 4 order under Texas law, or the court must conduct a choice-of-law analysis to determine the applicable law because the June 4 provision drops out of the contract. However, even if Texas law applies and the June 4 provision does not drop out of the contract, Texas will not abide by that choice of law provision if Tennessee had no substantial relationship to the parties or the transaction. *See DeSantis*, 793 S.W.2d at 677. In this case, Tennessee had no connection to the transaction. Thus, assuming the June 4 order was an offer, the court--whether it applies New Mexico or Texas law--ultimately must perform a "most significant contacts" choice of law analysis to determine what state's law will apply to the attorneys' fees issue. If Texas law prevails, Strickland, the prevailing party in the dispute, is entitled to its attorneys' fees. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001. New Mexico law does not permit an award of attorneys' fees in this case. *See Aboud*, 507 P.2d at 438-39.

Nevertheless, the stronger view appears to be that the June 4 order was a binding contract under New Mexico Statute § 55-2-207 and Texas Business and Commerce Code § 2.207, and the August 2

14

order was a valid modification under Texas Business and Commerce Code § 2.209 and New Mexico Statute § 55-2-209. Thus, Texas law applies to the award of attorneys' fees. Because Texas has a substantial relationship to the transaction, the district court did not err in finding that Strickland was entitled to its fees from Varco Pruden under Texas law. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001.

V.

Varco Pruden contends that, in the event that the district court did not err in awarding attorneys' fees to Strickland, the fees should have been segregated. First, the court found that all of Strickland's claims related to Varco Pruden's failure to furnish material that complied with its subcontract and the attendant costs and resulting delays to all the parties involved. While Strickland did not recover on its claim of delay damages, the court found that the facts relating to Strickland's delay claim were essentially the same and intertwined with the facts underlying the breach-of-contract claim. However, the court found that one part of the delay claim could be separated out--the testimony relating to actual money damages for the delay claim. Strickland did not segregate the fees attributable to proof of the dollar amounts for delay damages, but the trial court decided that the fees for

15

preparation and trial time for proof of such amounts could not have exceeded ten percent of Strickland's total attorneys' fees. Thus, the trial court reduced the amount of Strickland's recovery of attorneys' fees by ten percent.

Varco Pruden maintains that the court should have segregated Strickland's fees. Strickland pursued three claims against Varco Pruden: (1) the successful claim for breach of contract for which Strickland was awarded damages of $11,056.66 for extra work performed to correct a problem with anchor bolts, (2) the unsuccessful claim for delay damages, and (3) the unsuccessful claim for violations of the Texas DTPA. Varco Pruden insists that an examination of the pleadings and the record reveals that the facts relating to the unsuccessful delay claim and the Texas DTPA claim are not the same as those related to the successful breach of contract claim and that Strickland expended a substantial majority of its effort in the prosecution of its unsuccessful claims.

Varco Pruden maintains that the successful anchor bolt claim is simple and easily can be segregated from the other unsuccessful claims. In the anchor bolt claim, Strickland alleged that it had installed anchor bolts in the building foundation pursuant to designs submitted by Varco Pruden that later proved to be incorrect. Thus, Strickland had to perform extra work to correct the problem. Varco Pruden contends that the only proof needed to prove this claim was the submission and receipt of the incorrect design, reliance upon the design by Strickland, Strickland's

16

installation of the bolts pursuant to the design, and the value of the extra work to correct the mistake.

On the other hand, argues Varco Pruden, the elements required to prove the delay claim were more complex, and the delay claim had nothing to do with the anchor bolt claim. Further, Varco Pruden argues that the Texas DTPA claims required proof of different facts: Strickland had to show that Varco Pruden employed false or misleading practices, breached its warranties, misrepresented its goods and services, and committed an unconscionable act or course of action by failing to properly engineer, fabricate, and deliver the metal building.

While the court had discretion in its award of attorneys' fees, it should have abided by the general rule that recoverable fees must be segregated from unrecoverable fees. Even though such segregation might be difficult, in this case the simple claim on which Strickland prevailed--the anchor bolt claim--could have been isolated from the other unsuccessful claims.

VI.

The trial court awarded to File-Steele against Strickland and St. Paul prejudgment interest for its extra work claim. It is undisputed that prejudgment interest falls within the "scope of the remedy" available to a Miller Act claimant. *United States ex rel.*

*Lochridge-Priest, Inc. v. Con-Real Support Group, Inc.*, 950 F.2d 284, 287 (5th Cir. 1992).  State law governs the prejudgment interest award.  *See id.*  Under Texas law, if the contract specifies no rate of interest, as in this case, "interest at the rate of six percent per annum shall be allowed on all . . . contracts ascertaining the amount payable."  TEX. REV. CIV. STAT. ANN. art. 5069.1.03 (recodified at TEX. FIN. CODE ANN. § 302.002).  If the sum payable is not ascertainable from the contract, prejudgment interest may be appropriate in equity, at the rate specified in Texas Revised Civil Statutes Annotated article 5069.1.05--in this case, ten percent.  The district court determined that the oral contract, in which Strickland and File-Steele agreed that File-Steele would perform extra work, did not fix a measure of ascertainable damages with reasonable certainty; thus, the court applied prejudgment interest at a rate of ten percent under Article 5069.1.05.

Strickland and St. Paul argue that the sum payable to File-Steele for its extra work was readily and reasonably ascertainable from its oral agreement with File-Steele, so the court erred in not applying the six percent rate.  A contract is one "ascertaining the sum payable" within the meaning of Article 5069-1.03 when it "provide[s] the conditions upon which liability depends and . . . fix[es] 'a measure by which the sum payable can be ascertained with reasonable certainty.'"  *Perry Roofing Co. v. Olcott*, 744 S.W.2d

18

929, 930 (Tex. 1988) (citations omitted). Article 5069-1.03 applies when calculating prejudgment interest even if extrinsic evidence is needed to quantify contract damages, so long as the contract fixes a measure by which the sum payable can be ascertained with reasonable certainty in light of the attending circumstances. *See Great Am. Ins. Co. v. North Austin M.U.D. No. 1*, 950 S.W.2d 371, 373 (Tex. 1997). Strickland and St. Paul, relying on *North Austin M.U.D.*, argue that the oral contract with File-Steele fixed a measure by which the sum payable could be ascertained with reasonable certainty, and the court used extrinsic evidence to quantify the damages.

However, the oral contract did not fix a measure by which to ascertain the sum payable. A review of the record reveals that the measure of damages was hotly contested at trial precisely because there was no fixed measure for purposes of Article 5069-1.03. Thus, the trial court did not err in assigning a ten percent rate.

VI.

Thus, we AFFIRM the award of fees from Strickland and Varco Pruden, jointly and severally, to File-Steele. We also AFFIRM the district court's holding that File-Steele did not have to segregate its fees. Further, we AFFIRM the district court's holding that Strickland is entitled to attorneys' fees from Varco Pruden, but we

19

VACATE and REMAND so that the district court can segregate the fees.  Finally, we AFFIRM the district court's use of a ten percent interest rate on the award of prejudgment interest.