[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The present action arose following the defendants' alleged nonpayment for work that the plaintiff performed on a sub-subcontract. The plaintiff CT Page 8003 is Wolverine Fire Protection Co., Inc., d/b/a Smith Automatic Sprinkler. The defendants are Tougher Industries, Inc. (Tougher), and Employers Insurance of Wausau, A Mutual Company (Wausau).
The plaintiff alleges the following facts. Tougher was awarded a public contract by the department of public works on April 29, 1999, to act as a general contractor for construction and/or renovation to the Learning Corridor, a public building in Hartford, Connecticut. It is undisputed that the total contract exceeded $50,000. Pursuant to General Statutes § 49-41,[1] Wausau, as surety, and Tougher, as principal, executed a labor and material payment bond, in favor of Gilbane Building Company, the obligee, in the amount of $10,440,000 to secure Tougher's obligation to pay all claimants for labor and materials used or reasonably required for use in completing its public contract. Prior to June 9, 1999, Tougher entered into a subcontract with Accurate Automatic Fire Protection, Inc. (Accurate), for the installation of a complete fire protection system in the Learning Corridor. Accurate subcontracted with the plaintiff for "engineering [services including] stamped drawings [and] fabrication of piping and materials" for the Learning Corridor project. (Complaint, ¶ 4.) The plaintiff was to be paid the contract price of $224,000 in periodic installment payments while performing the sub-subcontract.
The plaintiff commenced performance on the sub-subcontract in June 1999. The plaintiff received several progress payments in the form of checks from Tougher to Accurate and the plaintiff jointly. On April 18, 2000, the plaintiff completed its work on the sub-subcontract. The plaintiff alleges that it substantially performed all the terms and conditions on its part and submitted timely invoices.
The plaintiff alleges that Tougher failed to perform under the terms of the bond by failing to pay promptly for labor and material used or required for use in the performance of the contract. The plaintiff alleges it is owed $77,094 under the terms of the subsubcontract. Pursuant to General Statutes § 49-42,[2] the plaintiff notified Tougher and Wausau of the amount due and owing on July 17, 2000. On September 25, 2000, Wausau denied liability as surety on the bond. On October 11, 2000, the plaintiff served a notice of claim by Federal Express and certified mail, return receipt requested on Wausau and Tougher demanding that Wausau make payment under the bond. Despite the plaintiff's notice of nonpayment, it has not been paid.
The plaintiff seeks payments and damages from Tougher, alleging that Tougher is liable on the following theories: the obligation on the bond pursuant to § 49-42 (count one); quantum meruit (count two); breach of implied covenant of good faith and fair dealing (count three); and breach of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes CT Page 8004 § 42-110b(a) et seq., (counts five)[3]. Similarly, the plaintiff alleges that the actions of Wausau constitute a violation of its surety obligation on the bond pursuant to § 49-42 (count one). The plaintiff also brings this action against Wausau for damages in quantum meruit (count two) and breach of the implied covenant of good faith and fair dealing (count four) and (CUTPA) (Count six). On April 5, 2001, Tougher and Wausau filed a motion to strike counts three, four, five and six of the plaintiff's complaint. The plaintiff filed an objection on April 18, 2001.
 DISCUSSION
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaints . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.)Peter-Michael, Inc. v. Sea Shell Associates, 244 Conn. 269, 270,709 A.2d 558 (1998). "Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . [W]hat is necessarily implied [in an allegation] need not be expressly alleged. . . . It is fundamental that in determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted. . . . Indeed, pleadings must be construed broadly and realistically, rather than narrowly and technically." (Citations omitted; internal quotation marks omitted.) Gazo v. Stamford,255 Conn. 245, 260, 765 A.2d 505 (2001).
 A Counts Three and Four Breach of Implied Covenant of Good Faith and Fair Dealing 1
Tougher and Wausau argue that counts three and four should be stricken because § 49-42 provides the plaintiff's exclusive remedy. The plaintiff argues that § 49-42 is not its exclusive remedy and that it has properly alleged all of the counts in its complaint.
"General Statutes (Rev. to 1983) §§ 49-41 through 49-43, which provide for the furnishing of bonds guaranteeing payment (payment bonds) on public works construction projects, were enacted to protect workers and materials suppliers on public works projects who cannot avail themselves of otherwise available remedies such as mechanic's liens." (Internal quotation marks omitted.) Blakeslee Arpaia Chapman, Inc. v. ElCT Page 8005Constructors, Inc., 239 Conn. 708, 714, 687 A.2d 506 (1997). "This legislation, known as the Little Miller Act (act), was patterned after the federal legislation popularly known as the Miller Act; 40 U.S.C. § 270a through 270d; and, therefore, [courts] have regularly consulted federal precedents to determine the proper scope of our statute. . . . The federal precedents, like our own, counsel liberal construction of statutory requirements other than those relating to specific time constraints. . . . As the United States Supreme Court has stated, the federal Miller Act is highly remedial in nature . . . [and] entitled to a liberal construction and application in order properly to effectuate the [legislative] intent and to protect those whose labor and materials go into public projects." (Citations omitted; internal quotation marks omitted.) Blakeslee Arpaia Chapman, Inc. v. ElConstructors, Inc., supra, 239 Conn. 716.
"Section 49-42 does not contain an exclusivity provision, and no Connecticut [Appellate] cases were found that expressly addressed the issue of whether [§] 49-42 provides an exclusive remedy. However, there have been cases in Connecticut in which violations of [§] 49-42
and (CUTPA), [the Connecticut Unfair Insurance Practices Act (CUIPA), § 38a-815][4] and CUTPA have been alleged in a single complaint."Blakeslee Arpaia Chapman, Inc. v. United States Fidelity Guaranty Co., Superior Court, judicial district of New London at New London, Docket No. 520348 (March 4, 1994, Hurley, J.); see, e.g., Okee Industries, Inc.v. National Grange Mutual Ins. Co., 225 Conn. 367, 623 A.2d 483 (1993) (complaint alleged violations of § 49-42, CUIPA and CUTPA); SaturnConstruction Co. v. Premier Roofing Co., 238 Conn. 293, 296, 680 A.2d 1274
(1996) (complaint alleged violations of § 49-41 a and CUTPA). Furthermore, the Connecticut Supreme Court has explicitly stated: "In the absence of . . . explicit language, we adhere to our long-standing rule that [n]o statute is to be construed as altering the common law, farther than its words import [and a statute] is not to be construed as making any innovation upon the common law which it does not fairly express." (Internal quotation marks omitted.) Rumbin v. Utica Mutual Ins. Co.,254 Conn. 259, 266, 757 A.2d 526 (2000).
The United States Courts of Appeals for the Second, Fifth, Ninth and Tenth Circuits have considered the issue of whether the federal Miller Act provides a plaintiff with an exclusive remedy, and these Courts of Appeals have concluded that it does not. See United States v. Reid GaryStrickland Co., 161 F.3d 915, 919 (5th Cir. 1998); Wright v. UnitedStates Postal Service, 29 F.3d 1426, 1431 (9th Cir. 1994); K-W Industriesv. National Surety Corp., 855 F.2d 640, 643 (9th Cir. 1988); Active FireSprinkler Corp. v. United States Postal Service, 811 F.2d 747, 754 (2nd Cir. 1987); United States v. Ins. Co. of North America, 695 F.2d 455, 458
(10th Cir. 1982). CT Page 8006
The issue of whether § 49-42 is a plaintiff's exclusive remedy has been addressed in several Connecticut Superior Court decisions. BlakesleeArpaia Chapman, Inc. v. United States Fidelity Guaranty Co., supra, Superior Court, Docket No. 520348, involved facts very similar to the present action. In Blakeslee Arpaia Chapman, Inc. v. United StatesFidelity Guaranty Co., the plaintiff alleged that the defendant's failure to pay the plaintiff on its subcontract balance constituted a breach of § 49-42, a violation of CUIPA, a violation of CUTPA; and a breach of the covenant of good faith and fair dealing. Looking to precedent from the federal courts construing the Miller Act, the court concluded that "[§] 49-42 is not plaintiff's exclusive remedy against a general contractor's surety." Id. In Premier Roofing Co. v. Ins. Co. ofNorth America, Superior Court, judicial district of Danbury, Docket No. 312438 (March 3, 1995, Leheny, J.) (13 Conn.L.Rptr. 544, 547), the court emphasized the remedial purpose of § 49-42 and permitted a CUTPA claim along with a claim under § 49-42. See also ProductionEquipment Co. v. Blakeslee Arpaia Chapman, Inc., Superior Court, judicial district of New Haven at Meriden, Docket No. 247485 (January 3, 1996,Silbert, J.) (15 Conn.L.Rptr. 558) (allowing CUTPA claim in addition to claim pursuant to § 49-42).
It is the opinion of this court that § 49-42 is not the plaintiff's exclusive remedy. The cases relied on by the defendants are distinguishable from the present action because they deal with a statutory remedy and the breach of the implied covenant of good faith and fair dealing in the context of employment law. See Contois v. CarmenAnthony Restaurant Group, L.L.C., Superior Court, judicial district of Waterbury, Docket No. 160287 (February 2, 2001, Doherty, J.) (plaintiff alleges violation of General Statutes § 31-290a and a claim for breach of the covenant of good faith and fair dealing); Rothberg v.United Illuminating Co., Superior Court, judicial district of New Haven, Docket No. 391576 (February 5, 1997, Silbert, J.) (18 Conn.L.Rptr. 690) (plaintiff alleges violation of General Statutes § 46a-60(4), §31-51m(d) and a claim for breach of the covenant of good faith and fair dealing).
 2
Tougher and Wausau argue in the alternative that counts three and four should be stricken because the plaintiff does not allege the type of aggravating circumstances necessary to support a claim of breach of the covenant of good faith and fair dealing arising from an alleged breach of contract. Specifically, Tougher and Wausau argue that the plaintiff relies merely on the non-payment of its alleged bills the basis for its breach of the duty of good faith and fair dealing and fails to offer CT Page 8007 evidence of egregious conduct by the defendant. The plaintiff argues that the third and fourth counts of its complaint sufficiently allege violations of the covenant of good faith and fair dealing.
"Every contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement." Habetz v.Condon, 224 Conn. 231, 238, 618 A.2d 501 (1992). "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. . . . Bad faith means more than mere negligence; it involves a dishonest purpose." (Citation omitted, internal quotation marks omitted.) Id., 237.
A mere conclusory allegation of bad faith "unsupported by any factual allegations, is insufficient to sustain a claim of bad faith." Waugh v.Nationwide Mutual Ins. Co., Superior Court, judicial district of New Haven at Meriden, Docket No. 244326 (January 5, 1996, Silbert, J.); see also Puglio v. National Grange Mutual Ins. Co., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 303610 (October 12, 1993, Maiocco, J.). "Thus, a claim for breach of the implied covenant of good faith and fair dealing is not legally sufficient unless a dishonest purpose or sinister motive is alleged." Pine Creek Partners v. Seaman, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 364880 (December 20, 2000, Skolnick J.); see also Cornerstone Bank v. OakStreet Center, Inc., Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 169832 (January 8, 2001,Hickey, J.); Siebe Environmental v. Johnson-Goodyear, Inc., Superior Court, judicial district of Hartford, Docket No. 585061 (October 6, 2000, Hale, J.); Amity Regional School v. The Atlas Construction Co., Superior Court, judicial district of Waterbury, Docket No. 153388 (August 15, 2000, McWeeny, J.).
The plaintiff has alleged that both of the defendants wrongfully withheld monies from the plaintiff; (Complaint, ¶ 16); and violated the little Miller Act; (Complaint, ¶¶ 11-17); that Tougher compelled the plaintiff to initiate litigation; (Complaint, ¶ 27); and that Wausau failed to conduct a good faith investigation in connection with the plaintiff's claim under the bond, thereby causing the plaintiff to initiate litigation. (Complaint, ¶¶ 31-32.) Wausau argues that the plaintiff was paid for its materials when it was a subcontractor. (Complaint, Exhibit D.) Wausau further argues that Accurate was terminated and another contractor finished the work that Accurate failed to complete on its subcontract. (Complaint, Exhibit D.) CT Page 8008
It is the opinion of the court that the plaintiff has merely concluded that the defendants acted in bad faith and has not alleged sufficient facts to support a claim of breach of the implied covenant of good faith and fair dealing. See Waugh v. Nationwide Mutual Ins. Co., supra, Superior Court, Docket No. 244326. Because the plaintiff has failed to allege that the defendants acted with an improper motive or purpose, the defendants' motion to strike counts three and four of the plaintiff's complaint is granted.
 B Counts Five and Six CUTPA
Tougher and Wausau argue that counts five and six should be stricken because the plaintiff has pleaded a simple breach of contract but has not pleaded facts sufficient to support a finding of bad faith, as required to prevail on a CUTPA claim. The plaintiff argues that statutory violations may provide a foundation for a CUTPA claim, especially where the statute allegedly violated was implemented to address public policy concerns.
"It is well settled that in determining whether [an act or] practice violates CUTPA we have adopted the criteria set out in the cigarette rule by the federal trade commission for determining when [an act or] practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [competitors or other businessmen]." (Internal quotation marks omitted.) Saturn Construction Co. v. PremierRoofing Co., supra, 238 Conn. 310. "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. . . . Thus a violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy." (Internal quotation marks omitted.) Id., 311.
"The Connecticut supreme court has determined that statutory violations, other than violations of CUIPA, may give rise to a CUTPA cause of action." Blakeslee Arpaia Chapman, Inc. v. United StatesFidelity Guaranty Co., supra, Superior Court, Docket No. 520348. "In enacting CUTPA, the legislature intended to create an expansive CT Page 8009 act. . . . To that end, the legislature expressly provided that `[i]t is the intention of the legislature that this chapter be remedial and be so construed.'" (Citation omitted.) Web Press Services Corp. v.New London Motors, Inc., 203 Conn. 342, 354,525 A.2d 57 (1987).
In Blakeslee Arpaia Chapman, Inc. v. United States Fidelity GuarantyCo., supra, Superior Court, Docket No. 520348, the court addressed the issue of whether a CUTPA action is maintainable with a § 49-42
claim. The court concluded that "[i]n view of the remedial aspects contained in both [§] 49-42 and CUTPA, and in light of the liberal construction afforded these statutes, the court finds that the plaintiff's CUTPA claim is maintainable." Id. See also ProductionEquipment Co. v. Blakeslee Arpaia Chapman, Inc., supra,15 Conn.L.Rptr. 558
(allowing CUTPA claim in addition to claim under § 49-42);Premier Roofing Co. v. Ins. Co. of North America, supra,13 Conn.L.Rptr. 547 (allowing CUTPA claim in addition to claim under § 49-42).
In light of the liberal construction afforded the CUTPA statute, the court finds that a violation of [§] 49-42 may give rise to a CUTPA claim.[5] The court denies the defendants' motion to strike counts five and six of the plaintiff's complaint.
 CONCLUSION
For the foregoing reasons, the defendants' motion to strike counts three and four of the plaintiff's complaint are granted and the defendants' motion to strike counts five and six of the plaintiff's complaint are denied.
HALE, JTR