KLEES, Judge.
Defendant, Schwegmann Giant Supermarkets, Inc. [hereinafter “Schwegmann”], appeals the trial court’s judgment awarding plaintiffs Malcolm and Johnnie Mae Keller damages for malicious prosecution. We reverse.
In December of 1985, Malcolm and Johnnie Mae Keller were shopping at the Schwegmann store on Airline Highway in Jefferson Parish. After they had paid for their groceries and left the store, a security guard approached them in front of the store and asked them to go back inside. Mrs. Keller took the basket of groceries back into the store with the guard, while Mr. Keller went to re-park their car. Once inside the store, Mrs. Keller was escorted upstairs to the security office while the guard took the groceries to the head cashier to be re-rung. When Mr. Keller arrived, he was also sent upstairs. The Kel-lers were unable to produce their original receipt, which Mr. Keller said he had thrown away outside the store. Upon re-ringing, the groceries totalled $210.88, significantly more than the $45.46 the Kellers had paid. The groceries were brought up to the office, spread out against a wall, and photographed. The security guard, Mr. Lollis, then went downstairs and found a torn-up receipt which he believed to be the Kellers’ in the trash can of the cashier who had checked out the Kellers.
*1060 The Jefferson Parish police were called, and Mr. and Mrs. Keller, as well as the cashier who had checked them out, were arrested. The security guard, Mr. Lollis, placed the photographs, the detailed roll from the cashier’s machine, the original receipt which he had taped back together, and the re-rung receipt in a sealed envelope and handed it over to the Jefferson Parish sheriffs deputy who had come to make the arrest.
The Kellers were prosecuted for theft, and were acquitted. None -of the evidence in the sealed envelope was used at trial. Mr. Lollis stated that the “city attorney” [1] told him during the criminal trial that the evidence had been misplaced.
On April 24, 1987, plaintiff brought this action alleging that they had been maliciously prosecuted by Schwegmann. The action was tried before the district judge on May 20, 1991. At the conclusion of the trial, the trial judge found in favor of plaintiffs and awarded them damages and interest totalling $19,176.44. This appeal followed.
After reviewing the record, we find the trial judge’s conclusion that Schwegmann is liable for malicious prosecution to be manifestly erroneous.
To establish malicious prosecution, a plaintiff must prove these essential elements: (1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; (6) damage conforming to legal standards resulting to plaintiff. Miller v. East Baton Rouge Parish Sheriff’s Dept., 511 So.2d 446, 452 (La.1987). In the instant case, the trial judge was clearly wrong in finding Schwegmann liable because plaintiffs did not prove either a lack of probable cause for their arrest or the presence of malice on the part of Schweg-mann.
Probable cause exists when facts and circumstances within the knowledge of the arresting officer and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense. Miller, supra, at 452. Mr. Louis Lollis, who in December of 1985 held the title of Assistant Loss Prevention Supervisor for the Schwegmann store on Airline Highway, testified that he stood a few feet away from the register and watched the Kellers check out. From his position, Mr. Lollis could see the items coming down the conveyor belt and the prices displayed on the cashier’s readout. He became suspicious that the correct prices were not being punched in by the cashier. When the sale concluded, he noticed that the total amount was only $45.46, despite the fact that one item in the Kellers’ basket was a set of Magnalite pots, which Mr. Lollis knew cost between $60.00 and $65.00. He also noticed that the Kellers had some liquor. He then approached the supervisor’s desk, asked the cashiers’ supervisor to pull the detailed roll on that particular register, and had the store manager, Mr. Schneider, paged.
After Mr. Schneider was apprised of the situation, Mr. Lollis went outside to confront the Kellers. They did not have their receipt. Mrs. Keller willingly came back inside with Mr. Lollis and the basket of groceries. When the groceries were re-rung, they totalled $210.88. Later, Mr. Lollis looked for the receipt and found a torn-up receipt in the cashier’s wastebasket behind the register where the Kellers had checked out. He reconstructed the pieces of the torn receipt, and noted that the transaction code number matched the one on the detailed roll which he knew was the Kellers’ because it reflected a total price of $45.46. He testified that this was the next to last transaction on the detailed roll.
The testimony of the store manager, Mr. Schneider, and of the cashiers’ supervisor, *1061 Mrs. Brauninger, basically corroborated that of Mr. Lollis, except that Mrs. Braun-inger thought the Kellers had two baskets of groceries rather than one. She confirmed the sequence of events and that the Kellers had a set of Magnalite pots and some liquor, as well as a ham and a turkey. Mr. Schneider confirmed that Mr. Lollis had alerted him to the situation and that he had supervised the re-ringing of the basket. Mr. Schneider stated that the security personnel were trained to watch for cashiers underringing or “sliding” groceries.
In view of this evidence, Schwegmann clearly had probable cause to have the Kel-lers and the cashier arrested. Schweg-mann is certainly entitled to rely on the observations of its trained security officer. Schwegmann personnel followed up on Mr. Lollis’ observations by conducting a reasonable investigation into whether a theft had occurred. The minor discrepancies in the testimony as to how many baskets were rung up and whether the Kellers were the very last or the next-to-last transaction before the detailed roll was pulled are irrelevant to the issue of probable cause to arrest, which clearly existed. The prosecution was the responsibility of the Jefferson Parish District Attorney’s office. There is no evidence that Schwegmann insisted or used any influence to keep the prosecution alive.
The trial judge in her statement on the record suggests that Schwegmann had no probable cause to maintain the prosecution of the Kellers after it lost the crucial evidence, which, she concluded, it was Schwegmann’s obligation to keep safe. This statement ignores the uncontradicted testimony of both Mr. Lollis and Mr. Schneider that the evidence was turned over to the Jefferson Parish Sheriff’s deputy in a sealed envelope on the day of the arrest. Schwegmann cannot have an obligation to preserve evidence that is no longer in its custody and has been turned over to the proper authorities. Moreover, Mr. Lollis testified, again uncontradicted, that the “city attorney”[2] had told him during the criminal trial that the evidence had been misplaced. Similarly, Mr. Schneider said the evidence had “mysteriously disappeared” by the time the criminal trial began. As Schwegmann was not aware that the evidence was lost, this fact could not possibly negate Schwegmann’s probable cause.
Moreover, the plaintiffs presented absolutely no evidence on the issue of malice, which is another element that must be proved by plaintiffs to establish malicious prosecution. The Supreme Court has defined malice as follows:
Any feeling of hatred, animosity, or ill will toward the plaintiff, of course, amounts to malice. But it is not essential to prove such ill will. Malice is found when the defendant uses the prosecution for the purpose of obtaining any private advantage, for instance, as a means to extort money, to collect a debt, to recover property, to compel performance of a contract, to “tie up the mouths” of witnesses in another action, or as an experiment to discover who might have committed the crime. Malice may be inferred from the lack of probable cause or inferred from a finding that the defendant acted in reckless disregard of the other person’s rights.
Miller supra, at 453 (Citations omitted). In the instant case, there is no evidence that any Schwegmann employee had any ill will toward the Kellers or toward the cashier who was arrested with them; nor is there any evidence of an ulterior motive for the prosecution. Schwegmann’s primary objective was to bring the theft offender to justice, which is sufficient justification for the criminal proceeding. The prosecution was not instituted for the purpose of obtaining any private advantage, such as collection of a debt, or to compel performance of a contract. This prosecution by Schweg-mann was for a legitimate purpose and does not constitute malice.
Moreover, Schwegmann clearly did not act with “reckless disregard” for the Kellers’ rights. The trial judge obviously inferred the existence of malice from the lack of probable cause. This inference was *1062 improper under the circumstances. The Supreme Court has held that malice may be inferred when there is an absence of probable cause “resulting from wanton and reckless disregard of the rights of the part sued, evincing absence of that caution and inquiry a party should employ before filing suit.” Jones v. Soileau, 448 So.2d 1268, 1273 (La.1984) (Citation omitted). Even if we agreed with the trial court’s finding that probable cause was absent, Schweg-mann’s actions clearly would not support the inference of malice under the law.
Accordingly, for the reasons given, we reverse the judgment of the trial court which found defendant liable for malicious prosecution. All costs are to be borne by the appellee.
REVERSED.

. The witness used the term "city attorney,” but was obviously referring to one of the prosecuting attorneys from the Jefferson Parish District Attorney’s office. Transcript, Vol. II, p. 186.

. See footnote 1.