IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

—————————————

No. 98-31216

—————————————

EDWIN BEDFORD,
                    *Plaintiff/Appellant,*

VERSUS

THE CITY OF MANDEVILLE, JAMES TURNER, ET AL.,
                    *Defendants/Appellees,*

—————————————

No. 99-30419

—————————————

EDWIN BEDFORD,
                    *Plaintiff/Appellant,*

VERSUS

THE CITY OF MANDEVILLE, ET AL.,
                    *Defendants*

JAMES TURNER,
                    *Defendant/Appellee*.

Appeal from the United States District Court of the
Eastern District of Louisiana
96-CV-737-B

July 11, 2000

Before DAVIS, CYNTHIA HOLCOMB HALL[*] and SMITH, Circuit Judges.

—————————————

[*] Circuit Judge of the Ninth Circuit, sitting by designation.

DAVIS, Circuit Judge:[**]

Edwin Bedford ("Bedford") filed this action following his arrest by Mandeville, Louisiana Police Officer James Turner ("Turner") and the State's subsequent prosecution of Bedford on charges relating to the arrest. Bedford asserted multiple claims for damages under § 1983 and Louisiana law. The district court dismissed Bedford's malicious prosecution claim on summary judgment ("SJ"). Following a jury verdict in favor of Bedford on the balance of his claims, the district court entered judgment on a portion of the verdict and granted a Judgment as a Matter of Law ("JML") on the balance. We affirm in part and reverse in part.

**I**

This suit arose out of a traffic stop, an ensuring altercation, and the arrest of Bedford by Mandeville, Louisiana Police Officer James Turner ("Turner"). Alleging that Turner knowingly used excessive force in effectuating his arrest, Bedford brought suit against him in his individual and official capacity. Bedford's suit included a § 1983 civil rights claim and state law battery, intentional infliction of emotional distress, and malicious prosecution claims. Bedford sought compensatory damages for physical pain and suffering, disability, mental anguish, lost income, and medical expenses. He also sought punitive damages. Before trial, Turner filed a SJ motion seeking dismissal of a number of Bedford's claims. The court partially granted Turner's motion and dismissed Bedford's malicious prosecution claim, on the ground that Bedford had failed to establish that Turner acted with malice. Following a two day jury trial, the jury found in favor of Bedford on both the § 1983 claim and the related state law claims. The jury awarded Bedford $32,000 in compensatory damages and

[**]Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

$50,000 in punitive damages. The jury itemized Bedford's compensatory damages as follows: $12,500 for lost income, $7,500 for past and future medical expenses, and $12,500 for physical pain and suffering/mental anguish. After this verdict, Turner filed a JML motion addressing all of Bedford's causes of action and damage theories, and the district court partially granted this motion and vacated the jury awards for Bedford's punitive damages, lost income, and intentional infliction of emotional distress claims because they were unsupported by the evidence. The trial court then entered judgment for $7,500, the amount the jury awarded Bedford for medical expenses. In a later order, the district court granted Bedford's post-trial motion for attorney's fees, but reduced the requested amount by 50%.

In this appeal, Bedford challenges the district court's: (1) SJ order dismissing his malicious prosecution claim; (2) JML order striking his awards for punitive damage, lost income, and intentional infliction of emotional distress; and (3) order reducing his attorneys' fees. We now turn to these arguments.

## II

Bedford argues first that the district court erred in granting Turner's SJ motion dismissing his malicious prosecution claim. Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(c), and this court reviews such grants de novo, see Morin v. Carin, 77 F.3d 116, 123 (5th Cir. 1996).

In order to establish a claim of malicious prosecution under Louisiana law, a plaintiff must establish: (1) the commencement or continuance of an original criminal proceeding, (2) its legal

3

causation by the present defendant against the plaintiff who was a defendant in the original proceeding, (3) its bona fide termination in favor of the present plaintiff, (4) the absence of probable cause for such a proceeding, (5) the presence of malice therein, and (6) damage conforming to legal standards resulting to plaintiff. See Miller v. East Baton Rouge Parish Sheriff's Dept., 511 So.2d 446 (La. 1987).

The district court concluded that because the District Attorney holds all prosecutorial responsibility, no malicious prosecution claims can lie against a police officer such as Turner. This conclusion is not supported by the Louisiana case law. Louisiana courts have permitted recovery by a number of plaintiffs for malicious prosecution against non-prosecutors, including law enforcement officers.[1] In these cases, the courts have held that plaintiffs can satisfy the tort's legal causation element by a showing that a police officer submitted a materially false affidavit or report in support of the plaintiff's arrest or prosecution.[2] To this end, Bedford's summary judgment evidence included numerous allegedly false police reports prepared and signed by Turner. These reports contain a version of events portraying Bedford as the initial physical aggressor, a theory of the evidence the jury found at least partially false in reaching its verdict on the plaintiff's § 1983 and state tort claims.

_____

[1] See e.g., Jack v. Johnson, 618 So.2d 448 (La. App. 1993) (involving a *malicious prosecution* claim against a bank and bank employee who allegedly improperly had the plaintiff arrested); Keller v. Schwegmann Giant Supermarkets, Inc., 604 So.2d 1058 (La. App. 1992) (involving a claim against a supermarket for detaining and having a plaintiff arrested); Winn v. City of Alexandria, 685 So.2d 281 (La. App. 1996) (involving a claim against police officers).

[2] See e.g., Touchtone v. Kroger Co., 512 So.2d 520 (La. App. 1987) (holding that the *causation* prong was not met where the officer had not initiated complaints against the plaintiff or supported the issuance of an arrest warrant through false affidavits); Hughes v. Standidge, 219 So.2d 6 (La. App. 1969) (upholding judgment against a police officer who testified to signing a false affidavit supporting the plaintiff's prosecution and affirming a judgment in favor of another officer who had not signed such an affidavit).

Because material issues of fact were presented on Bedford's malicious prosecution claim, the district court erred in granting Turner's motion for SJ.

### III

Bedford argues next that the district court erred in striking his $50,000 punitive damage award. A jury may assess punitive damages in an action under § 1983 if the defendant's conduct is shown to be motivated by evil motive or intent or involved reckless or callous indifference to the federally protected rights of others, see Smith v. Wade, 461 U.S. 30, 56, 103 S. Ct. 1625, 1640 (1983). The court held that Bedford had failed to present sufficient evidence that Turner's conduct was motivated by evil intent or motive or involved reckless or callous indifference to federally protected rights.

The jury, viewing the evidence in the light most favorable to Bedford, could have accepted his theory of the case and concluded that Turner's actions were accompanied by at least a reckless or callous indifference to Bedford's rights. Evidence supporting this conclusion includes the testimony of Orville Jack Jones ("Jones"), an independent witness to the incident. Jones's testimony corroborated much of Bedford's testimony and supports the jury's implicit findings that Turner initiated the violence and used grossly excessive force during the arrest.[3] Thus, this evidence supports the punitive damage award, and the JML order striking such damages must be reversed.

---

[3]See generally, Creamer v. Porter, 754 F.2d 1311, 1319 (5th Cir. 1985) (involving a police officer's extensive three-hour search o f the plaintiff's residence, including files and small personal spaces, when the search warrant pertained to a large television set that had been seized prior to the search); Stokes v. Delcambre, 710 F.2d 1120, 1126 (5th Cir. 1983) (involving an officer's failure to appropriately control and supervise a parish jail, leading to assaults on the plaintiff by fellow detainees).

## IV

Bedford next challenges the district court's order granting Turner's JML motion with respect to Bedford's intentional infliction of emotional distress claim. Because we agree that Bedford failed to establish at least one of the elements of this cause of action, we affirm the district court's JML order on this claim.

A district court's application of state law is reviewed de novo, see Salve Regina College v. Russell, 499 U.S. 225, 231, 111 S. Ct. 1217, 1221 (1991); Scottish Heritable Trust, PLC v. Peat Marwick Main & Co., 81 F.3d 606, 610 (5th Cir. 1996). The Louisiana's Supreme Court delineated the elements of an action for intentional infliction of emotional distress in White v. Monsanto Co.. 585 So.2d 1205, 1209 (La. 1991):

> "In order to recover for intentional infliction of emotional distress, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." Id. at 1209 (emphasis added).

The district court held, inter alia, that Bedford failed to prove the second element, severe emotional distress. We agree. While Bedford testified to making an attempt to receive counseling after the incident, he admitted to abandoning this effort after finding it too costly and produced no medical testimony at trial of emotional injury. Moreover, even Bedford's Brief in this appeal characterizes his psychological injuries as "humiliation and fear," effects traditionally not rising to the level of severe emotional distress or anguish that no reasonable person could be expected to endure. See Id; Smith v. Ouachita Parish School Bd., 702 So.2d 727, 736 (La. App. 1997) (holding that general embarrassment and humiliation do not satisfy this standard); Glass v. First United Pentecostal Church of DeRidder, 676 So.2d 724, 738 (La. App. 1996); cf. Millon v. Johnston, 1999 WL 104413,

6

*5 (E.D. La. 1999) (holding that slurred speech, dizziness, and a stroke resulting from the defendant's conduct may satisfy the standard). Consequently, we affirm the trial court's grant of the JML on Bedford's intentional infliction of emotional distress claim.

## V

Bedford next challenges the district court's order striking his award for lost income as inadequately supported by the record evidence. In general, a plaintiff can only recover damages that were proven at trial, see Prunty v. Arkansas Freightways, Inc., 16 F.3d 649, 652 (5th Cir. 1994), with reasonable certainty, see Silor v. Romero, 868 F.2d 1419, 1422 (5th Cir. 1989) (NO. 88-4147). Our review of the record leads us to agree that Bedford failed to introduce adequate evidence to support an award of lost income. See Silor v. Romero, 868 F.2d 1419, 1422 (5th Cir. 1989). See generally Schmuester v. Burkburnett Bank, 937 F.2d 1025, 1030 (5th Cir. 1991).

Bedford's evidence on this issue was limited to his own testimony, that of his fiancee, and scant financial records. While Bedford did produce tax returns for the years of 1992, 1993, 1994, and 1996, he failed to produce any such records for 1995, the year of his arrest. Moreover, these returns show inconsistent earnings for these periods[4] and even indicate he earned more the year following his alleged injuries than those prior to the arrest.

In light of the paucity of specific evidence on this damage theory, the trial court's JML is appropriate. A plaintiff's own uncollaborated testimony is ordinarily considered inadequate to support an award of lost wages, see also Forsyth v. City of Dallas, Tex., 91 F.3d 769, 776 (5th cir. 1996) (upholding JML where plaintiff's lost income award rested merely on his own testimony). In

---

[4]These records show that he lost $577 in 1992, earned $2,209 in 1993, earned 4,977 in 1994, and earned $5,709 in 1996.

addition, Bedford's limited tax returns do not provide objective support for his lost wages claim. Therefore, the district court did not err in concluding that Bedford failed to establish his claim for lost wages.

## VI

Bedford next challenges the district court's reduction of his attorney fees. An award of attorneys' fees rests in the sound discretion of the trial court, and its judgment will not be reversed absent a clear showing that it abused its discretion. See U.S. for Varco Pruden Bldgs. v. Reid & Gary Strickland Co., 161 F.3d 915, 919 (5th Cir. 1998). Furthermore, all factual findings supporting such conclusions are reviewed for clear error. Riley v. City of Jackson, Miss., 99 F.3d 757, 759 (5th Cir. 1996).

Bedford made a request for attorney's fees in the amount of $69,338.50. This figure was reached by multiplying a $150 hourly rate by the 454.59 total hours Bedford's two attorneys, G. Fredrick Kelly ("Kelly") and William Magee ("Magee"), claimed to have spent on the case. Relying on recent fee awards for attorney's with similar experience, the district court found the $150 hourly rate was reasonable for Magee, but unreasonable for Kelly and reduced the latter's rate to $130/hour. Consistent with this rate reduction, the district court originally calculated the lodestar for Kelly and Magee at $56,353.70 and $3,165 respectively. The court later reduced the fees paid to Kelly by 50% to take into account his fees's "egregiously disproportionate" relationship to the $7,500 awarded in the case after the JML rulings. While Kelly claimed only to have spent 50 hours on Bedford's unsuccessful claims, the district court found this estimate unreasonable and determined that a 50%

8

downward adjustment "reflected more accurately time spent on the issues and defendants over which plaintiff did not prevail." Bedford now contends that the court abused its discretion in reducing both Kelly's hourly rate and the number of legitimately chargeable hours.

In Hensley v. Eckerhart, the Supreme Court announced that a district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation. In particular, the Court offered the following guidance:

> "Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained."
> Id. 103 S. Ct. at 1943.

While Bedford asserts that Kelly's itemized billing statements support his contention that Kelly spent only 60.8 hours on ultimately unsuccessful claims, the district court was certainly free to make a contrary factual determination. The court's unique position of presiding over all stages of this litigation has afforded it an excellent perspective to independently determine how much preparation was necessary for each claim, and it is not obliged to accept Kelly's self-generated billing records in reaching its reasonableness determination.

However, in light of our disposition of this appeal, in which we reverse the dismissal of Bedford's malicious prosecution claim and reinstate Bedford's punitive damage award, we conclude that this case should be remanded for reconsideration of the fee award in light of Bedford's increased level of ultimate success, see Perales v. Casillas, 950 F.2d 1066, 1073-74 (5th Cir. 1992).

**VII**

9

For the above reasons, we reverse the lower court's SJ order dismissing Bedford's malicious prosecution claim. We also reverse the court's JML order striking Bedford's punitive damage award and remand the case to the district court for further consideration of an appropriate award for attorney's fees in light of our opinion. We affirm the judgment of the district court in all other respects.