1MAX N. TOBIAS, JR., Judge.
Bryant Hawkins and State Farm Mutual Automobile Insurance Company appeal a judgment of the trial court in favor of Charles Sanchez awarding him $35,000.00, plus judicial interest and costs.[1] For the following reasons, we reverse.
This case arises from a rear-end automobile accident involving three vehicles. On 8 December 1999, the plaintiff, Charles Sanchez (“Sanchez”), was in his pickup truck on Chef Menteur Highway (“Chef Menteur”) in New Orleans when his truck was struck from the rear by another pickup truck driven by Bryant Hawkins (“Hawkins”), a defendant in this matter. The impact pushed Sanchez’s truck into a third vehicle driven by Brenda Blatcher (“Blatcher”), who is not a party to this litigation. While Sanchez contends that he was traveling along Chef Menteur in an easterly direction when he was struck from behind by Hawkins, Hawkins maintains that Sanchez had actually just emerged from a tire shop parking lot adjacent to the accident site and cut across three lanes of traffic, disregarding oncoming vehicles and giving Hawkins no opportunity to avoid the resulting crash. There were several witnesses to this accident, including Blatcher, pSanchez, Hawkins, *1127 and several employees of the tire shop adjacent to the accident site.
Sanchez subsequently filed suit against Hawkins and his insurer, State Farm Mutual Automobile Insurance Company alleging that Hawkins “suddenly and without warning ... changed from the far right lane into the far left lane, slamming into the rear of the petitioner’s vehicle.... ” The matter was set to be tried to a jury; however, the jury was waived and a bench trial held. The trial court found the damages to be $50,000.00 and found Hawkins 70% at fault and Sanchez 30% at fault.
Sanchez testified at trial that on the day of the accident, between 5:00 p.m. and 6:00 p.m., he was driving down Chef Menteur. Chef Menteur in the vicinity of the accident is a six-lane roadway with three lanes of travel in each direction, divided by a median; at the intersection that is the site of the accident, the road further divides to create a left-hand turn lane. A tire shop is located just before the intersection on this stretch of road that is adjacent to the accident site. Sanchez maintained that he was traveling in the left lane of Chef Ment-eur when he slowed to stop for a red light at the intersection in question. He claimed that he had just left his home after picking up some fishing equipment and that he was en route to visit a friend who owned a fishing camp on U.S. Highway 11 in New Orleans. Sanchez did not acknowledge that he was in the tire shop immediately before the accident. He testified that he did not see Hawkins’ truck approaching, but that he heard tires screeching on pavement approximately two to three seconds before he felt Hawkins’ truck hit his own from behind, pushing his vehicle into Blatcher’s vehicle, which was stopped in the left-hand turn lane, just to the left of the lane in which Sanchez claims to have been traveling. Sanchez testified that his truck was | ^approximately two car lengths from the intersection when he was hit and that the first time he saw Hawkins’ truck was just before he hit him. Sanchez testified that he remained in his truck and did not leave it following the accident, as instructed by a police officer responding to the scene. He denied being asked if he was injured by the police officer responding to the scene and testified that he did not talk with any of the witnesses to the accident following the accident.
Sanchez testified that as a result of the accident, he sustained a cut over his left eye, a knot on his head, neck strain, low back pain, and a cut on the side of his knee. He also testified that he is a diabetic. Sanchez did not present any doctor’s testimony at trial to substantiate his injuries, but rather introduced his medical records into evidence.
Hawkins testified at trial that the accident occurred between 5:45 p.m. and 6:00 p.m.[2] and that he was heading home from work. He testified that he had his truck’s headlights on, not because it was dark, but rather because he habitually drove with the lights on. Hawkins testified that as he approached the intersection with Wilson Avenue, he was driving between 30 and 35 miles per hour,[3] and that the main lanes of travel on Chef Menteur had the green light. As he approached the intersection, he witnessed Sanchez’s vehicle suddenly *1128 cut across the three lanes of travel to stop just short of Blatcher’s vehicle, coming to a stop while angled across the left lane of traffic, in which Hawkins was traveling at the time. He estimated the distance that he was from Sanchez’s vehicle was 90 to 100 feet as |4Sanchez began crossing from the tire shop. Hawkins testified that he hit his brakes, but that he could not stop in time to avoid the accident.
Blatcher testified by deposition. Although subpoenaed to appear at trial by the defendants, she did not appear, but rather indicated through a phone message that she was ill. In her deposition, Blatcher testified that the accident occurred around 6:30 p.m. She recalled that it was dark at the time and that she had her lights on. She testified that on the day of the accident, she left home and drove to the tire shop to pick up her nephew and her brother-in-law, who were waiting at the tire shop. She recalled getting out of her vehicle while she was there and conversing with Monroe Stamps, Quentin Stine, and Terrell Byrd (“Byrd”), who is her nephew. She further testified that while she was at the tire shop, Sanchez pulled up to the tire shop and that he asked Byrd to change a tire. The record is unclear as to whether she recalled whether Sanchez was successful in getting his tire changed. Blatcher testified that she backed out of the tire shop parking lot onto Chef Menteur and that she pulled across the three lanes of traffic into the left turn lane, which had a red light. She recalled hearing a vehicle’s tires screeching shortly thereafter, as if accelerating rapidly, and seconds later the sound of tires squealing a little further away. She testified that she did not see Sanchez pull across the road, but that she saw the impact as it happened in her rear-view mirror. She testified that she did not know either Hawkins or Sanchez personally-
Several employees of the tire shop in question apparently witnessed the accident. Officer Barnes testified that none of the witnesses were willing to fill out and sign a statement immediately following the accident. (In fact, a number of purported eyewitnesses did not appear for trial in violation of the subpoenas issued by the defendants.) Two witnesses, however, Richard Lee (“Lee”) and Bobby |KMagee (“Magee”), appeared and testified on behalf of the defendants. Lee and Magee testified that they were working at the tire shop at the time of the accident. Byrd failed to appear or testify.
Lee testified at trial that on the day of the accident, he was working at the tire shop, which was owned by his uncle. He stated that on the date of the accident, the hours of the tire shop were from 7:00 a.m. to 6:00 p.m. He recalled that Sanchez visited the tire shop just before the accident, which he estimated as occurring sometime around 5:45 p.m., and had pulled out of the lot and cut across the three lanes of traffic in an apparent attempt to get to the left turn lane. He testified that he had not spoken to Sanchez, but that he witnessed Sanchez leave the parking lot and cut straight across Chef Menteur to get into the left turn lane. He noted Sanchez was unable to clearly enter the turn lane given the angle of his vehicle. He further indicated that the accident occurred in the blink of an eye,[4] which he estimated to be not more than a second or two. He estimated Hawkins’ truck was 50 feet away from Sanchez when Sanchez crossed in front of Hawkins and that Hawkins was *1129 going 45 miles per hour. Lee further opined that there was nothing Hawkins could do to avoid the accident. Lee recognized Blatcher as the aunt of a co-worker and acknowledged that she had also been a customer at the tire shop shortly before the accident.
Magee, Lee’s co-worker, testified that the accident occurred around 6:00 p.m. and that Sanchez pulled into the parking lot of the tire shop just before the accident. He stated that he was assisting a customer and that Byrd, another tire shop employee, approached Sanchez and that they had a discussion. He testified |fithat no one worked on Sanchez’s truck, and that Sanchez appeared angry and left hurriedly. Magee stated that Sanchez pulled across Chef Menteur in an apparent attempt to enter the left turn lane, but that he was unable to enter the lane due to a vehicle already in place there and that Sanchez was blocking at least two lanes of travel with his truck. He testified that when Sanchez pulled out of the parking lot, he spun his tires and they squealed. He further testified that Hawkins was approximately 50 feet from Sanchez as Sanchez pulled in front of him, that he heard Hawkins slam on his brakes, and indicated that Hawkins could not avoid the accident. He testified that he left before speaking with police about the accident. Magee was questioned about Sanchez’s appearance and testified that he believed that Sanchez was wearing a hat at the time of the accident and that his beard was shorter than it was at trial. He further testified that he recognized Sanchez as a regular customer of the tire shop.
Louis Richardson (“Richardson”) testified by deposition. Richardson stated that he resided at a fishing camp on U.S. Highway 11 in Louisiana and that Sanchez had fished on his property on a number of occasions. He denied knowing him other than as a casual acquaintance and testified that he never knew when Sanchez would appear to fish, but that it was usually during daylight hours. He was unable to shed any light on Sanchez’s whereabouts on the day of the accident or as to whether Sanchez might have been traveling to fish on his property.
Officer Gary Barnes, the first officer to report to the scene of the accident, testified at trial. In addition to that noted above, Officer Barnes testified that he was called to the scene at approximately 6:10 p.m. and arrived a few minutes thereafter. He testified that, due to the heavy traffic on Chef Menteur at that time, he instructed all the drivers involved in the accident to move their vehicles to a |7parking lot adjacent to the roadway. He referred to the police report and testified that he interviewed all of the witnesses at the scene and from their testimony, deduced that Sanchez had pulled across Chef Menteur from the tire shop parking lot and that this movement had caused the accident. He testified that he had asked everyone who was involved in the accident whether anyone was injured, and testified that only Monroe Stine, a passenger in Blatcher’s car, had indicated possible injury. He did not recall that Sanchez was injured in any way. He further testified that he issued citations to Sanchez for following too closely, improper lane usage, and reckless operation. He did not issue any citations to any other driver.
Photographs of the vehicles involved in the accident were admitted into evidence. A close examination of the photographs reveals that the damage to Hawkins’ truck was to the center and immediate right of the center of the front of his truck and the damage appears to have resulted from impact with a pointed, or angled surface. The damage to Sanchez’s truck in the rear is isolated to the left rear quadrant of the *1130 vehicle, around the left rear taillight. The photographs clearly indicate that Hawkins did not directly rear-end Sanchez’s truck as it would have had they been traveling in the same direction, but rather corroborate the eyewitnesses’ testimony that Sanchez’s truck was catty-corner angled across the road, attempting to enter the turn lane when struck.
The defendants had also subpoenaed several other eyewitnesses to testify at trial, including the two passengers in Blatcher’s vehicle, but they did not appear for trial. Although the witnesses had been deposed earlier in the litigation, the trial court would not allow the submission of their deposition testimony into the record. As such, the trial court did not consider their testimony.
| «The trial court ruled that Sanchez was 30% at fault for the accident; the remaining 70% fault was allotted to Hawkins. The trial court, in its reasons for judgment, found that Sanchez, contrary to his testimony, attempted to cross two lanes of the eastbound traffic on Chef Menteur and that his negligence, in part, caused his damages. The trial court further found that Hawkins was traveling in excess of the speed limit at the time of the accident and that his excessive speed was a proximate cause of the accident, as he was unable to stop in time to avoid the accident. No other reason was given for the finding of negligence on the part of Hawkins. The trial court indicated in its reasons for judgment that the trial testimony was varied and inconsistent with regard to many factors, including the location of the two vehicles, the speed of Hawkins’ vehicle, the time frame within which the accident occurred, and even as to what type of hat, if any, Sanchez was wearing at the time of the accident.[5] The trial court was further disturbed by the fact that the eyewitnesses who did appear at trial to testify apparently declined to get involved in the investigation of the accident when approached by the police officer responding to the accident and that several other witnesses who were subpoenaed did not appear at trial in violation of the subpoenas.[6]
The defendants assign six errors to the trial court.[7] They first argue that the trial court erred in finding Hawkins 70% at fault and Sanchez only partially responsible for the accident in question when the evidence presented at trial | establishes that Sanchez pulled out of the tire shop in front of Hawkins and caused the accident. Second, the defendants assert that Sanchez is not entitled to an award of $50,000.00 insofar as he did not carry his burden of proof at trial and failed to present medical testimony to support his personal injury claims. The defendants also contend that the trial court erred in discounting the testimony of several eyewitnesses as “suspicious” when their testimony was consistent with the great weight of the evidence presented at trial. Finally, the defendants take issue with the trial court’s refusal to admit into evidence the *1131 deposition testimony of three eyewitnesses who failed to appear for trial, when those depositions were taken for all purposes under the Louisiana Code of Civil Procedure.
The defendants’ primary contention is that the trial court erred in finding Hawkins liable for 70% at fault for the accident and Sanchez only 30% at fault. They vehemently argue that the only witness whose testimony can be completely discredited is Sanchez’s. He maintained, in his pleadings and in his trial testimony, that he was traveling down Chef Menteur just before the accident and that he did not visit the tire shop on that day. Every other witness to the accident who testified at trial testified that Sanchez had been at the tire shop just before the accident. The only individual who might have offered some credence to the plaintiffs story is Richardson; but Richardson testified that he had no knowledge as to whether Sanchez intended on visiting him that night. We do note, however, that Richardson indicated that he was accustomed to seeing Sanchez during daylight hours to fish. The trial court, after hearing all of the evidence, did not find that Sanchez’s rendition of the accident or even of his whereabouts just prior to the |inaccident were supported by the evidence; obviously, the trial court did not find him credible in all respects. Nevertheless, even in light of the finding by the trial court that Sanchez was in error regarding the bare facts of the accident, the trial court still rendered judgment in his favor and found him only 30% at fault for the accident.
A court of appeal may only set aside a finding of fact by a trial court if that finding is clearly wrong or manifestly erroneous based upon the evidence presented at trial and the record on appeal. Stobart v. State through DOTD, 617 So.2d 880, 882 (La.1993). The reviewing court must look to whether the trial court’s findings were reasonable, in light of the evidence presented at trial, and not to whether the court was correct or incorrect in its findings. Perry v. Anderson, 99-0230, p. 3 (La.App. 4 Cir. 1/12/00), 751 So.2d 374, 376.
The “manifest error — clearly wrong” standard of review has been explained as follows:
“It is well settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong,” and where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.... Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. In applying the manifestly erroneous — clearly wrong standard to the findings below, appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo. When the findings are based on determinations regarding the credibility of witnesses, the manifest error — clearly wrong standard demands great deference to the trier of fact’s findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Where documents or objective evidence so contradict a witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness’s story, the court of appeal may well find manifest error or clear *1132 wrongness even in a finding purportedly |nbased upon a credibility determination. But where such factor’s are not present, and a factfinder’s finding is based on its decision to credit the testimony of one or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.”
Rosell v. ESCO, 549 So.2d 840, 844-45 (La.1989) (citations omitted; emphasis added).
While a trial court’s findings of facts may not be reversed unless clearly wrong or manifestly erroneous, this court does have an affirmative constitutional duty to review facts. La. Const, art. V, § 10B; Ambrose v. New Orleans Police Dept. Ambulance Serv., 93-3099, 93-3110, 93-3112 (La.7/5/94), 639 So.2d 216; Burns v. UHS of New Orleans, Inc., 2002-1514 (La.App. 4 Cir. 2/19/03), 841 So.2d 51. It is because of this duty that we are required to determine whether the trial court’s decision was clearly wrong based on the evidence in the record or without evidentiary support. Id. The reviewing court must do more than just simply review the record for some evidence that supports or controverts the trial court’s findings; it must instead review the record in its entirety to determine whether the trial court’s finding are clearly wrong or manifestly erroneous. Stobart, 617 So.2d at 882. The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but rather whether the factfinder’s conclusion is a reasonable one in light of the evidence. Id. The reviewing court must always keep in mind that “if the trial court’s or jury’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.” Id. at 882-3, citing, Housley v. Cerise, 579 So.2d 973 (La.1991), quoting, Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990). However, as cautioned by the Supreme Court:
| ^Notwithstanding the Court’s earlier guidance to reviewing courts in Stobart v. State through DOTD, 617 So.2d 880 (La.1993), it was not our purpose in that case to mandate that the trial court’s factual determinations cannot ever, or hardly ever, be upset.
Ambrose, 93-3009, p. 8, 639 So.2d at 221 (emphasis added).
The trial court did not find Sanchez to be totally credible and completely discounted his testimony as to the facts of how the accident occurred. While Sanchez maintained that he had been driving down Chef Menteur and that Hawkins had changed lanes to strike his vehicle from the rear, it is clear from the testimony of every other witness that he, Sanchez, had, in fact, been parked or stopped in the parking lot of the tire shop in question just prior to the accident and that the accident happened immediately after he pulled out of the parking lot hurriedly and crossed at least two lanes of traffic.[8] (Sanchez, interestingly enough, never alleged that Hawkins was speeding or that Hawkins’ speeding was a proximate cause of the accident. In fact, no material evidence of speeding was presented at the trial on the merits.[9]) Hawkins testified that he was driving between 30 and 35 miles per hour down Chef *1133 Menteur. Sanchez could not offer any estimate of Hawkins’ speed and the eyewitnesses to the accident had a range of estimates. Blatcher did not see Hawkins’ truck prior to the accident and offered np testimony regarding his speed. Lee testified that he believed that Hawkins was driving “around about the [speed] limit” and estimated his speed at forty-five or fifty miles per hour. Sanchez’s counsel attempted to impeach Lee with regard to this testimony, and introduced into evidence portions of Lee’s deposition in which |13he testified that Hawkins “must have been doing the limit, I’d say at least about sixty.” Under cross-examination, Lee indicated that he would not waver from his earlier testimony, but further testified that he had also estimated that Hawkins was driving forty-five miles per hour just before the accident. Magee testified that he estimated that Hawkins was driving the speed limit or a little over, which he apparently believed was forty-five miles per hour. What is striking is that the testimony of both of these witnesses indicates that they were under the impression that Hawkins’ speed was in accordance with the speed limit. Neither witness testified or indicated that they believed or were under the impression that Hawkins was traveling at an excessive or unsafe rate of speed.
Sanchez argues that Magee and Lee were successfully impeached at trial. He points to the discrepancies in their testimonies regarding the status of the traffic signals at the intersection, who spoke with Sanchez at the tire shop, the color of Sanchez’s truck, and how many seconds after Sanchez pulled out of the tire shop parking lot that the accident happened. While there are some discrepancies in their testimony, the overall testimony of Magee and Lee clearly establishes that Sanchez was at the tire shop just prior to the accident and that he hurriedly pulled out of the parking lot across at least two lanes of traffic before being hit almost immediately by Hawkins.
The trial court was also apparently troubled by the inconsistencies in the testimony offered by the eyewitnesses as to details such as what kind of hat Sanchez was wearing, whether Sanchez had a beard, the exact service Sanchez attempted to have performed at the tire shop, and how fast Hawkins was going just |ubefore the accident. These details, however, are not particularly impressive when confronted with the basic fact that all witnesses, save Sanchez, agreed that the accident was caused by Sanchez crossing two lanes of traffic in a hastened attempt to reach the turn lane. As this court has noted in the past in other cases, it would perhaps be more suspicious if the eyewitnesses were more uniform in their testimony regarding what the plaintiff was wearing and whether he had a beard. Kelly v. West Cash & Carry Building Materials Store, 99-0102, p. 25 (La.App. 4 Cir. 10/20/99), 745 So.2d 743, 759. In Kelly, a convenience store employee sued her employer for false imprisonment after she was questioned regarding theft from the store. She attempted to impeach two witnesses to the incident by pointing out discrepancies between affidavits executed by the witnesses and their deposition testimony. The court in Kelly noted that “the discrepancies, such as they were, were such as one would normally expect when the same event is recounted by different persons and at different times.” Id. The court likened the discrepancies to “minor discrepancies” found in the witness testimony in Keller v. Schwegmann Giant Supermarkets, Inc., 604 So.2d 1058, 1061 (La.App. 4 Cir.1992), which involved conflicting testimony surrounding the events of a malicious prosecution case arising from apprehension of an alleged shoplifter on the number of baskets rung up and whether the plaintiff was last or next-to- *1134 last in line at the time of the incident complained-of. The court noted that such discrepancies were not relevant to the central issue of whether probable cause to arrest existed. Similarly, in the case at bar the discrepancies highlighted by Sanchez and the trial court cannot diminish the simple fact that Sanchez’s version of his actions prior to and during the accident directly contradict the facts of the accident as recited by every otherj 1K witness, which are at least basically consistent as to how the accident happened. Even the photographs of the damage to the vehicles following the accident do not substantiate Sanchez’s version of events.
The defendants point to the decision rendered by this court in Perry v. Anderson, 99-0230 (La.App. 4 Cir. 1/12/00), 751 So.2d 374. Perry involved a motor vehicle accident in which the defendant apparently made an improper left turn in front of the plaintiff, causing the accident. In Perry, the responding officer issued a citation to the defendant and none to the plaintiff. Following a trial on the merits, the trial court found in favor of the defendant. This court overturned that decision and determined that, based on the record on appeal, the defendant was clearly liable for the accident, insofar as she turned left in front of the plaintiff from the middle lane of the street on which she was traveling, and that the plaintiff had established by a preponderance of the evidence that he was injured as a result of the accident. While the Perry decision at first blush seems to support a reversal of the trial court, we note that there is insufficient information regarding any credibility determinations that may or may not have been instrumental in the trial court’s judgment.
However, in the case at bar, we find that the testimony and evidence, when taken as a whole, do not support the judgment entered by the trial court. Sanchez’s testimony regarding the accident is simply not credible upon any reasonable, rational review of the evidence. In fact, the specific acts of negligence on the part Hawkins complained of by Sanchez have essentially been disproved by the unreliable testimony of Sanchez, who the trial court even alludes to the fact that he was not truthful regarding the events in question, and by the substantially consistent testimony of other witnesses regarding Sanchez’s actions just prior to 11fithe testimony. Hawkins’ speed was not a proximate cause of the accident. The proximate cause of the accident was Sanchez’s pulling into Chef Menteur, cutting in to the path of Hawkins who, being confronted with a situation, was unable to avoid colliding with Sanchez’s vehicle. Sanchez’s apparent fabrication regarding the facts of accident, compounded with the complete lack of any evidence or indication that any witnesses, other than him and Hawkins, would have any motive to fabricate their testimony regarding the accident, makes it simply unreasonable to find for Sanchez in this case.[10]
Insofar as we have determined that the evidence presented at trial and the record on appeal do not support the judgment of the trial court insofar as any fault on the part of Hawkins and as we find the trial court’s judgment clearly wrong, we preter-mit a decision of the remaining assignments of error, for they are moot. The judgment of the trial court is therefore reversed and judgment is entered for the defendants.

REVERSED AND RENDERED.

. Technically the appealed judgment casts no one in judgment; it merely awards the plaintiff $35,000.00, interests, and costs.

. We take judicial notice that daylight savings time was not in effect and that the accident occurred approximately two weeks prior to the winter solstice, the day of the year with the least sunlight in this hemisphere. It was either dark or dusk at the time of the accident.

. We take judicial notice that a vehicle traveling 30 miles per hour will travel approximately 44 feet in one second and approximately 51 feet if proceeding at 35 miles per hour.

. In his deposition that was used in part at the trial, he referred to the period of time as "not even a good second."

. We note that although the trial court seems to indicate that testimony that Sanchez was wearing some kind of hat bolsters his claim that he was going fishing at the time of the accident, Sanchez himself testified that he was not wearing a hat at the time of the accident.

. The trial court was apparently troubled by the fact that several witnesses disregarded the trial subpoenas issued by the defendants and failed to present testimony regarding the accident, but then contrarily seems to question the "lengthy testimony” of the two individuals who did appear in accordance with the trial subpoenas because they had previously indicated an unwillingness to get involved.

.Although there are six assignments of error, many are somewhat duplicative, and are discussed together.

. It is not subject to dispute that Sanchez pulled from the tire shop across the eastbound lanes of traffic of Chef Menteur. His testimony to the effect that he was not at the tire shop is obviously terminologically inexact.

. Although some of the witnesses opined that the speed limit at the accident site was 45 miles per hour, the ordinances of the city of New Orleans set the speed limit at 40 miles per hour. New Orleans Ord. § 154-1194.

. In fact, we note that none of the witnesses knew Hawkins prior to the accident while the tire shop employees did know Sanchez, on sight at least, as a regular customer.